**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By Carrie Ramirez at 10:02 am, Nov 23, 2009

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 7 Case |
| JEFFREY S. MCDONALD | ) | |
| FRANKIE SMITH MCDONALD | ) | Number <u>07-40698</u> |
| | ) | |
| *Debtors* | ) | |

## MEMORANDUM AND ORDER
## ON TRUSTEE'S MOTION TO APPROVE
## COMPROMISE SETTLEMENT

Debtors filed a Chapter 7 case on May 11, 2007. Prior to filing, Debtor/Wife had suffered a personal injury and was pursuing it through her personal injury attorney. The Trustee now brings this Motion seeking authority to compromise the claim for the sum of $67,500.00. Debtor objects to this settlement, believing that the case should proceed to trial. For the foregoing reasons I overrule her objection and grant the Trustee's Motion.

## FINDINGS OF FACT

The facts underlying this dispute are as follows. Following a September 4, 2004 slip and fall injury at a Best Buy store in Savannah, Debtor was seen by medical personnel at Immediate Med and then by Dr. Wallace Holland. She had allegedly sustained a sprained left foot and leg and suffered from muscle spasms in her hip and back. She claims that these injuries ultimately caused her to go to a chiropractor, Dr. Chris Whelan. In

October 2004—allegedly because of back spasms—she fell, broke her right foot, ended up in the emergency room and has suffered continuing difficulties from that injury.

At some point she hired attorney Benjamin Eichholz to pursue her case. Mr. Eichholz filed a demand letter in her behalf, but did not pursue the case beyond that point. Instead, he referred the case to attorney George Lewis and provided Mr. Lewis with a lengthy 75 page demand package he had sent to the insurance company. Based on the demand package, Mr. Lewis filed a lawsuit on Debtor's behalf and scheduled the deposition of Dr. Hoffman. During the course of his deposition Dr. Hoffman realized and immediately revealed that some of the medical records from which he was being asked to testify had been altered. As a result of that revelation, Mr. Lewis dropped the case. Apparently Mr. Eichholz claimed that Debtor, not someone from his office, committed the forgery.

The Trustee ultimately determined that all of the medical records, except the chiropractor's, contained certain alterations. The unaltered records were in Mr. Eichholz's firm files, but altered forms were forwarded to the insurance company in what the Trustee believes was an effort to tie the subsequent injury into her original slip and fall in order to enhance the value of her claim.

In February of 2007 Debtor hired Charles Grile to pursue her case and the Trustee sought and obtained approval of this Court for Mr. Grile to act as the Trustee's counsel in doing so. In addition to the difficulty presented by the alleged forgery,

the Debtor's former son-in-law apparently informed personnel at Best Buy that her injury was fake. Discovery revealed that although she had W-2 forms showing a significant decrease in earned income, she in fact suffered no lost wages and was unable to document them sufficiently to claim them as an element of her damages. Because of the alleged forgeries and other irregularities in the case, as well as disputed liability and damages, the case was vigorously defended by counsel, but as the trial date neared offers that had been in the $15,000.00 range were increased to $30,000.00. During the pre-trial proceedings in State Court the defense increased its offer to $40,000.00, to which Mr. Grile countered with an offer of approximately $94,000.00. This was after the trial court, in pre-trial proceedings, ruled that the testimony and evidence about forgery would be allowed into evidence before the jury and after counsel had been forced to abandon any lost wage claim—which initially had been calculated at $60,000.00 to $80,000.00 per year for a five year period.

Ultimately, on the eve of trial, the parties essentially split the difference between their negotiating positions and a $67,500.00 settlement was offered and accepted. Mr. Grile testified that in his opinion, after thirty years of practice including substantial experience in the personal injury field, a $67,500.00 settlement is much better than should be expected in light of the negative features attached to his case.

Although there was a dispute over whether Debtor had authorized the $67,500.00 settlement, I conclude from consideration of the entire record, that Mr. Grile is correct in believing that his client gave him authority to accept the settlement and attempted

to withdraw that authority only after she learned that she would not receive all the net proceeds of the settlement because a significant amount of it would be paid to the Chapter 7 Trustee for the benefit of her creditors.

Debtor continues to assert that there is a connection between her original injury at Best Buy and the subsequent fall and more serious injury she sustained a few weeks later. She is concerned that she may face future surgical procedures. She vigorously disputes that she had any part in the alteration of documents and she disputes that she authorized Mr. Grile to settle the case for $67,500.00. Nevertheless, after carefully considering her objections and the applicable law, I conclude as follows:

1) Mr. Grile had her authority to settle the case for $67,500.00;

2) Even if he did not, the case is an asset of the estate pursuant to 11 U.S.C. § 541(a)(1) and it is the Trustee's authorization and the Trustee's recommendation which is critical; and

3) The Trustee's recommendation that the settlement of $67,500.00 is fair and that Mr. Grile's fees are reasonable is supported by the evidence and will be approved.

## CONCLUSIONS OF LAW

Trustees have the authority to seek an order approving a compromise under

Bankruptcy Rule 9019(a). Controlling authority concerning the standard to be attached to trustee's actions in this area include the concept that trustees, as fiduciaries appointed to serve in bankruptcy estates, are granted broad discretion. Approval of trustee's applications to compromise controversy are governed by a standard which hold that settlements that are within the range of reasonableness, sometimes even on the lowest end of the range of reasonableness, should be approved by the Court. *See* In re Topgallant Lines, Inc., 1996 WL 33401346, *3 (Bankr.S.D.Ga. 1996)(Davis, J.); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758 (Bankr. S.D. N.Y. 1992). Finally, this Court's review of proposed settlements should not involve a trial of the entire case on the merits. Rather, the Court must conduct a reasonable inquiry into "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." Protective Committee for Independent Stockholders of TMT Trailer Ferry, 390 U.S. 414, 424 (1968). In determining the advisability of a settlement, the Court is to take into account "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Nutraquest, Inc., 434 F.3d 639, 644 (3rd Cir. 2006) (citing TMT Trailer, 390 U.S. at 424-25). In this case the settlement amount, given the many weaknesses in the Debtor's case, is reasonable.

As a result of the settlement, after payment of attorney's fees, the Debtor will receive her allowed exemption in the amount of $15,000.00. The Trustee estimates that after administrative expenses, creditors will receive a dividend of at least 65%. To roll the

dice and proceed to litigation could clearly result in no recovery whatsoever.

I further find that Mr. Grile is entitled to compensation for his efforts in the amount sought. He has worked tirelessly to bring about a result far better than the Trustee could have expected in a case replete with weaknesses. Any dispute between him and his client concerning sums that are alleged to be owed to him for other representation, or for services rendered by Debtor to his law firm are outside the scope of this Court's jurisdiction and will have to be resolved in the state court system in a court of appropriate jurisdiction.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Trustee's Motion to Approve Compromise is approved and attorney's fees and expenses advanced by Mr. Grile are allowed in full.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 19th day of November, 2009.